**MEUERS LAW FIRM, P.L.**
Lawrence H. Meuers, Esq. (197663)
Katy Koestner Esquivel (Pro Hac Vice)
5395 Park Central Court
Naples, FL 34109
Telephone: (239)513-9191
Facsimile: (239)513-9677
lmeuers@meuerslawfirm.com
kesquivel@meuerslawfirm.com

**COOLEY GODWARD KRONISH LLP**
Martin S. Schenker (109828)
Whitty Somvichian (194463)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222
wsomvichian@cooley.com
mschenker@cooley.com

Counsel for Plaintiff/Counter-Defendant
Natural Selection Foods, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NATURAL SELECTION FOODS, LLC dba EARTHBOUND FARMS, <br><br> Plaintiff/Counter-Defendant, <br><br> vs. <br><br> RIVER RANCH FRESH FOODS, LLC., <br><br> Defendant/ Counter-Plaintiff. | Case No.: 5:07-cv-02548-JW <br><br> **RE-FILED MOTION TO DISMISS COUNTERCLAIMS AND TO STRIKE AFFIRMATIVE DEFENSES** <br><br> Date: Monday, November 5, 2007 <br> Time: 9:00 a.m. <br> Location: Robert F. Peckham Federal Building and United States Courthouse <br> Courtroom 8, 4th Floor <br> 280 South First Street <br> San Jose, CA 95113 |

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1050870 v1/SF

RE-FILED MOTION TO DISMISS COUNTERCLAIMS
& TO STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:07-CV-02548-JW

TABLE OF CONTENTS

PAGE

INTRODUCTION .................................................................................................................... 2
BACKGROUND ...................................................................................................................... 3
    I.    THE PARTIES ................................................................................................... 3
    II.    RIVER RANCH'S COUNTERCLAIMS .......................................................... 3
    III.    NATURAL SELECTION'S PACA CLAIM ..................................................... 4
ARGUMENT ............................................................................................................................. 4
    I.    RIVER RANCH'S COUNTERCLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION ............................................ 4
        A.    River Ranch's Counterclaims And Natural Selection's PACA Claims Do Not Share Any "Common Nucleus Of Operative Fact" ......................................... 5
        B.    River Ranch's Counterclaims Should Also Be Dismissed Because They Predominate Over Natural Selection's PACA Claims ..................................... 7
    II.    THE COUNTERCLAIMS ALSO FAIL AS A MATTER OF LAW .................. 8
        A.    Counts II and III Should Be Dismissed Because They Are Improper Attempts To Bootstrap Contract Allegations Into Claims For Tort Damages ........ 8
            1.    The Alleged Failure to Perform A Contract Cannot Support Claim for Tort Damages ......................................................................... 8
            2.    River Ranch's Purported Tort Claims Are Further Barred By The Economic Loss Rule ............................................................................ 9
            3.    River Ranch's Interference with Prospective Economic Advantage Claim Should Also Be Dismissed For Failure to Allege "Independently Wrongful" Conduct ................................................ 10
        B.    River Ranch's Contract Claims Are Inconsistent With the Attached Documents And Should Also Be Dismissed ................................................. 11
    III.    RIVER RANCH'S "AFFIRMATIVE DEFENSES" SHOULD BE STRICKEN BECAUSE THEY ARE COUNTERCLAIMS IMPROPERLY PLED AS DEFENSES ............................................................................................................ 12
CONCLUSION ........................................................................................................................ 13

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1050870 v1/SF

-i-

RE-FILED MOTION TO DISMISS COUNTERCLAIMS
& TO STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:07-CV-02548-JW

TABLE OF AUTHORITIES

PAGE(S)

CASES

Aas v. Superior Court,
  24 Cal.4th 627 (2000) .................................................................................................. 9

Arntz Contracting Co. v. St. Paul Fire & Mar. Ins. Co.,
  47 Cal. App. 4th 464 (1996) ................................................................................. 10, 11

Bell Atlantic Corporation v. Twombly,
  127 S. Ct. 1955 (2007) ............................................................................................... 12

California Prune and Apricot Growers v. Baker,
  77 Cal.App. 393 (1926) ............................................................................................... 6

Campos v. Western Dental Services,
  404 F.Supp.2d 1164 (N.D. Cal. 2005) ........................................................................ 8

Channell v. Citicorp Nat'l Services,
  1996 WL 563536 (N.D. Ill. 1996) ............................................................................... 8

Citizens Marine Nat. Bank v. U.S. Dept. of Commerce,
  854 F.2d 223 (7th Cir. 1998) ....................................................................................... 5

Della Penna v. Toyota Motor Sales, U.S.A., Inc.,
  11 Cal. 4th 376 (1995) ......................................................................................... 10, 11

Durning v. First Boston Corp.,
  815 F.2d 1265 (9th Cir 1987) .................................................................................... 11

Erlich v. Menezes,
  21 Cal.4th 543 (1999) ............................................................................................. 8, 9

G.M. Harston Construction Co., Inc. v. City of Chicago,
  2006 WL 642641 (N.D. Ill. 2006) ............................................................................... 6

Khoury v. Maly's of California, Inc.,
  14 Cal. App. 4th 612 (1993) ................................................................................. 10, 11

Kuba v. 1-A Agr. Ass'n,
  387 F.3d 850 (9th Cir. 2004) ................................................................................... 4, 5

Lange v. TIG Ins. Co.,
  68 Cal. App. 4th 1179 (1999) .................................................................................... 10

Metalmark v. Stewart,
  2006 WL 1277793 (D. Oregon 2006) ........................................................................ 6

National Medical Transportation Network v. Deloitte & Touche,
  62 Cal. App. 4th 412 (1998) ...................................................................................... 10

Picard v. BART,
  823 F.Supp. 1519 (N.D. Cal. 1993) ............................................................................ 7

Quintana v. Gates,
  2004 WL 1661540 (C.D. Cal. 2004) ......................................................................... 13

Sparrow v. Mazda American Credit,
  385 F.Supp.2d 1063 (2005) ......................................................................................... 8

Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.,
  222 F.3d 132 (3d Cir. 2000) ........................................................................................ 8

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1050870 v1/SF

-ii-

RE-FILED MOTION TO DISMISS COUNTERCLAIMS
& TO STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:07-CV-02548-JW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
**(CONTINUED)**

PAGE(S)

*Thompson v. Illinois Dept. of Prof. Reg.*
   300 F.3d 750 (7th Cir. 2002) .................................................................................... 11

*Wiley Trendwest Resorts,*
   2005 WL 1030220 (N.D. Cal. 2005) ......................................................................... 6

**STATUTES**

28 U.S.C.
   § 1367 ........................................................................................................................ 4
   § 1367(c)(2) .......................................................................................................... 7, 13

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1050870 v1/SF

-iii-

RE-FILED MOTION TO DISMISS COUNTERCLAIMS
& TO STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:07-CV-02548-JW

## NOTICE OF MOTION & STATEMENT OF RELIEF SOUGHT

NOTICE IS HEREBY GIVEN THAT Plaintiff/Counter-Defendant Natural Selection Foods, LLC dba Earthbound Farms ("Natural Selection") will and hereby does move the Court for an order under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 12(f) dismissing the Counterclaim and striking the Affirmative Defenses of River Ranch Fresh Foods, LLC ("River Ranch"). The hearing is scheduled for Monday, November 5, 2007, at 9:00 a.m. in the courtroom of the Honorable Judge James Ware at the above-entitled Court, located at 280 South First Street, San Jose, California.[1]

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities and accompanying exhibits, all pleadings and papers on file herein and upon such other evidence as may be properly considered by the court at the hearing of said motion.

## STATEMENT OF ISSUES TO BE DECIDED

1. Do River Ranch's state law counterclaims and purported defenses fall within the supplemental jurisdiction of this Court, when they are based on a distinct series of events and transactions from those at issue in the federal claim currently pending before this Court, brought under the federal Perishable Agricultural Commodities Act (PACA)?

2. Even if supplemental jurisdiction exists for the counterclaims and purported defenses, should the Court exercise its discretion to decline jurisdiction, where the state law issues to be litigated would be substantially broader and more complex than the discrete PACA issues and would significantly delay resolution of Natural Selection's federal claim?

3. If the Court determines that the exercise of jurisdiction is proper, do the counterclaims and defenses state any claim upon which relief may be granted?

---

[1] This motion was timely filed on July 27, 2007 and tentatively set for hearing on September 11, 2007. The hearing is being re-scheduled as set forth herein in light of the re-assignment of this case to the Honorable Judge James Ware.

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1050870 v1/SF         -1-         RE-FILED MOTION TO DISMISS COUNTERCLAIMS
& TO STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:07-CV-02548-JW

## INTRODUCTION

River Ranch's state law counterclaims and purported defenses have nothing to do with the claims asserted in the Complaint arising under the Perishable Agricultural Commodities Act ("PACA"), and Natural Selection respectfully requests that the Court dismiss all counterclaims and defenses for lack of subject matter jurisdiction.

Natural Selection's federal PACA claims involve essentially a single issue: whether Natural Selection is entitled to assert PACA remedies in connection with produce it supplied to River Ranch from July 18 to August 28, 2006. River Ranch now seeks to dramatically expand the scope of this lawsuit by introducing new and wholly unrelated disputes stemming from an outbreak of *E. Coli* that occurred *after* the sales which are the subject of Natural Selection's PACA claims. If the Court were to retain jurisdiction over River Ranch's state law counterclaims, the parties and the Court would be embroiled in extensive and protracted litigation over the root cause of the nationwide *E. Coli* outbreak, Natural Selection's role in the outbreak, and the resulting impact on various affected persons and entities. Litigating the counterclaims will also require complex calculations regarding the many aspects of River Ranch's damages claims, including its purported lost profits, lost future sales, and the impact on its customer base and business reputation. River Ranch even alleges that Natural Selection's conduct harmed "the entire prepackaged salad industry" and it would presumably seek to litigate that all-encompassing contention as part of its counterclaims.

The far-reaching issues raised by River Ranch have nothing to do with the narrow questions presented on Natural Selection's PACA claims and should not be litigated in this forum. Because the state law counterclaims and the federal PACA claims share no common nucleus of operative facts, there is no basis for River Ranch to invoke the Court's supplemental jurisdiction under 28 U.S.C. § 1367. Even if River Ranch could show that the requirements for supplemental jurisdiction are satisfied, the Court should exercise its discretion under subsection 1367(c)(2) to decline jurisdiction. The extensive litigation needed to resolve River Ranch's state law counterclaims would substantially predominate the discrete PACA issues, delaying resolution of Natural Selection's claim and undermining the basic purpose of PACA to provide prompt

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1050870 v1/SF   -2-   RE-FILED MOTION TO DISMISS COUNTERCLAIMS
& TO STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:07-CV-02548-JW

payment to sellers of produce like Natural Selection. These factors strongly support dismissal of River Ranch's counterclaims so that they may be litigated in the proper forum in state court.

Finally, even if the Court were to exercise jurisdiction over the counterclaims, they should each be dismissed as matter of law. As discussed further below, each of the counterclaims suffers from fatal defects in pleading. River Ranch's tort claims in particular run afoul of black-letter rules under California law that prohibit plaintiffs from manufacturing tort claims from allegations that amount to nothing more than a breach of contract.

## BACKGROUND

### I. THE PARTIES.

Natural Selection is in the business of selling pre-packaged produce, including spinach and blends containing spinach. For a number of years, Natural Selection has sold "Spring Mix" and other produce to River Ranch. (Complaint, ¶¶ 7-8; Counterclaims, ¶ 54).

### II. RIVER RANCH'S COUNTERCLAIMS.

River Ranch's counterclaims (the "Counterclaims") are based on its purchase from Natural Selection of produce that was subsequently recalled due to an outbreak of *E. coli* bacteria in certain products containing spinach (the "Outbreak"). (Countercl., ¶ 57). After the Outbreak was linked to Natural Selection's processing facility, Natural Section initiated a voluntary recall of its products and instructed all customers, including River Ranch, to destroy all produce purchased between <u>August 29, 2006 and September 15, 2006</u> (the "Recall Period"). (Compl., ¶¶ 9-10). Natural Selection reimbursed its customers for produce purchased within the Recall Period by applying credits to outstanding and future invoices, with the amount of credits determined based on each customer's request. River Ranch requested, and was given, a <u>100% credit</u> on all purchases during the Recall Period, which totaled $103,350.50. (Compl., ¶14).

River Ranch now asserts various counterclaims based on contract, warranty, and tort theories under state law – all predicated on the contamination of produce sold by Natural Selection during the Recall Period. *See, e.g.*, Counterclaims at ¶ 65 (breach of contract claim based on "processing packaging and selling produce contaminated with E. Coli"); ¶ 69 (negligence claim based on negligent failure to "eliminate contamination of the produce it was

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1050870 v1/SF                    -3-                    RE-FILED MOTION TO DISMISS COUNTERCLAIMS
                                                        & TO STRIKE AFFIRMATIVE DEFENSES
                                                        CASE NO. 5:07-CV-02548-JW

processing and selling."); ¶ 78 (tortious interference claim based on "negligently failing to take reasonable and necessary steps in the processing of [Natural Selection's] products to ensure it was not contaminated.").

Because River Ranch has already received a 100% credit for produce purchased in the Recall Period, the only remedies sought in the Counterclaims are additional consequential damages going beyond recovery of its purchase price. River Ranch seeks to recover lost profits from sales both during the Recall Period and for undefined "future sales." (Countercl., ¶¶ 61, 71.) River Ranch also seeks to recover for "damage to its customer base" along with harm to its "industry reputation" and to "the entire prepackaged salad industry." (*Id.* at ¶¶ 72, 79.)

### III. NATURAL SELECTION'S PACA CLAIM.

In contrast to the Counterclaims, Natural Selection's PACA claims relate exclusively to produce sold to River Ranch <u>before the Recall Period</u> between July 18 to August 28, 2006. As explained in the Complaint, the $126,700.00 amount at issue in the PACA claims is the outstanding amount that River Ranch owes to Natural Selection <u>after</u> the 100% credit that Natural Selection provided to River Ranch for produce sold during the Recall Period. (*See* Complaint, ¶¶ 14-15.) The PACA claims and River Ranch's Counterclaims thus involve different lots of produce purchased at different time periods that are mutually exclusive.

### ARGUMENT

### I. RIVER RANCH'S COUNTERCLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.

The Court should reject River Ranch's effort to append unrelated and expansive state law counterclaims to the narrow PACA claims currently before the Court. Under 28 U.S.C. §1367, a court may exercise supplemental jurisdiction over counterclaims that lack an independent basis for jurisdiction only where the counterclaims "are so related" to other claims within the court's original jurisdiction "that they form part of the same case or controversy under Article III of the United States Constitution." A state law counterclaim is part of the same "case or controversy" as a federal claim only if the two "derive from a common nucleus of operative fact" such that the parties "would ordinarily be expected to try them in one judicial proceeding." *Kuba v. 1-A Agr.*

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1050870 v1/SF

-4-

RE-FILED MOTION TO DISMISS COUNTERCLAIMS
& TO STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:07-CV-02548-JW

*Ass'n*, 387 F.3d 850, 855-56 (9th Cir. 2004). In applying this standard, courts have emphasized that there must be commonality and overlap as to "*operative*" facts, defined as "the facts upon which the determination of liability ... [are] based." *Citizens Marine Nat. Bank v. U.S. Dept. of Commerce*, 854 F.2d 223, 227 (7th Cir. 1998). Here, River Ranch's Counterclaims fall far short of the standard needed to invoke this Court's supplemental jurisdiction.

### A. River Ranch's Counterclaims And Natural Selection's PACA Claims Do Not Share Any "Common Nucleus Of Operative Fact".

The Counterclaims that River Ranch seeks to add to this litigation would introduce a broad array of new factual disputes that have no relationship to the discrete issues to be litigated on Natural Selection's pending PACA claim. River Ranch alleges that Natural Selection breached various contractual and tort duties owed to River Ranch in connection with spinach sold in the Recall Period of August 29-September 15, 2006. Resolving the liability issues raised in the Counterclaims will require a fact-finder to make a complex determination on the root cause of the *E. Coli* contamination and whether Natural Selection breached any duties owed to River Ranch in connection with its sales during the Recall Period. River Ranch's broad damages allegations will also require the parties to litigate the impact of the Outbreak on River Ranch's "customer base," its anticipated "future sales," and even the purported harm caused to "the entire prepackaged salad industry." (Countercl., ¶¶ 61, 71-72, 79.)

None of these facts have anything to do with the narrow PACA claims before the Court. Natural Selection's claims seek to enforce the statutory trust under PACA, and Natural Selection's rights as a beneficiary of that trust. The sales which give rise to Natural Selection's PACA claims took place *before* the Recall Period, from July 18 to August 28, 2006. The only facts relevant to Natural Selection's PACA claims are (i) Natural Selection's sales of produce to River Ranch from July 18 to August 28, 2006, (ii) Natural Selection's provision of written notice required under PACA in connection with those sales, and (iii) River Ranch's failure to pay for the produce sold on the particular dates at issue. If Natural Selection proves these straightforward facts, it will be entitled to assert PACA remedies for the produce it sold to River Ranch between July 18 to August 28, 2006 – *regardless* of how River Ranch's unrelated Counterclaims might be

Cooley Godward
Kronish LLP
Attorneys At Law
San Francisco

1050870 v1/SF

-5-

Re-Filed Motion to Dismiss Counterclaims
& to Strike Affirmative Defenses
Case No. 5:07-cv-02548-JW

resolved.

Even if River Ranch could prove that Natural Selection breached its duties relating to produce sold within the subsequent Recall Period, that would in no way excuse River Ranch's obligation to pay Natural Selection for produce sold *before* the Recall Period. Under long-established principles of contract law, "[a] breach of contract is not justified by anything that the other party subsequently does or omits to do." Coltoff, et al., *Corpus Juris Secondum*, Contracts, § 519. *See also California Prune and Apricot Growers v. Baker*, 77 Cal.App. 393, 398 (1926) ("a breach of contract cannot be justified by anything the other party to the contact may have done or omitted to do afterwards"). Regardless of how they are resolved, River Ranch's Counterclaims will have no impact on Natural Selection's PACA claim, further confirming that the two do not share the "common nucleus of operative fact" needed to invoke the Court's supplemental jurisdiction.

The mere fact that Natural Selection's PACA claims and River Ranch's Counterclaim arise out of an ongoing buyer-seller relationship is insufficient to establish a "common nucleus of operative fact." Indeed, courts have routinely rejected efforts to invoke supplemental jurisdiction where the claims at issue involve separate events arising from the same ongoing relationship. *See, e.g., Metalmark v. Stewart,* 2006 WL 1277793, at *3 (D. Or. 2006) (no supplemental jurisdiction where original claim and counterclaim involved two separate bids at different times, finding that "[t[here is no common nucleus of operative fact other than that many, but not all, of the parties overlap"); *Wiley Trendwest Resorts*, 2005 WL 1030220, at *4 (N.D. Cal. 2005) (declining to exercise supplemental jurisdiction where claim and counterclaim involved different events arising out of the same employment relationship, and collecting similar authorities from the Third and Eleventh Circuits); *G.M. Harston Construction Co., Inc. v. City of Chicago,* 2006 WL 642641, at *4 (N.D. Ill. 2006) ("the fact that both claims arose from an employment contract is insufficient to grant supplemental jurisdiction.").

Because River Ranch's Counterclaims do not share any "common nucleus of operative fact" with Natural Selection's PACA claim, they should be dismissed for lack of supplemental jurisdiction.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1050870 v1/SF

-6-

RE-FILED MOTION TO DISMISS COUNTERCLAIMS
& TO STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:07-CV-02548-JW

**B.    River Ranch's Counterclaims Should Also Be Dismissed Because They Substantially Predominate Over Natural Selection's PACA Claims.**

Even where a state law counterclaim meets the standards for supplemental jurisdiction, a court may decline jurisdiction if the state claims "substantially predominate" over the federal claim that provides the court's original jurisdiction. 28 U.S.C. § 1367(c)(2). In evaluating whether a state law claim "predominates," courts look to whether the state claim is broader than the federal claim "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." *Picard v. BART*, 823 F.Supp. 1519, 1527 (N.D. Cal. 1993).

Under these standards, River Ranch's Counterclaims should not be litigated in this forum because the state law claims alleged would introduce a vast spectrum of new and unrelated issues that would substantially predominate and overwhelm the discrete PACA claims currently pending before the Court. The sole issue to be decided on Natural Selection's PACA claims (whether Natural Selection can assert PACA remedies related to sales of produce from July 18 to August 28, 2006) can likely be resolved as a matter of law. Even if the case has to be tried, the matter could be resolved in a short bench trial.

In contrast, River Ranch's Counterclaims will require wide-ranging litigation of an array of issues as described above, including (i) a determination of the cause of the Outbreak, (ii) an evaluation of Natural Selection's overall food safety practices in comparison to overall industry practice, and (iii) a calculation of the multiple categories of consequential damages alleged by River Ranch. Litigation of these issues will require evidence going far beyond the narrow scope of the PACA claims, including testimony from multiple lay and expert witnesses who would have nothing to do with any PACA-related issue. If River Ranch's Counterclaims ultimately have to be tried, the resulting trial would likely have to be presented to a jury and would last several weeks if not longer. River Ranch's Counterclaims are far broader and more complex than the narrow PACA claims, and they should be litigated in a separate lawsuit in state court.

Furthermore, permitting the Counterclaims to be litigated along with the PACA claims would undermine the basic purpose of the PACA statute to provide a streamlined remedy for

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1050870 v1/SF

-7-

RE-FILED MOTION TO DISMISS COUNTERCLAIMS
& TO STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:07-CV-02548-JW

suppliers of produce like Natural Selection.[2] In similar circumstances, courts have declined to exercise supplemental jurisdiction where litigating a state law counterclaim would conflict with a federal statutory scheme intended to benefit persons or entities similarly situated to the plaintiff. *See Campos v. Western Dental Servs., Inc.*, 404 F. Supp. 2d 1164 (N.D. Cal. 2005) (declining to exercise supplemental jurisdiction over defendant's state law breach of contract counterclaim because it would conflict with the purpose of the Federal Debt Collection Practice Act claim brought by plaintiff); *Sparrow v. Mazda American Credit*, 385 F.Supp.2d 1063 (E.D. Cal. 2005) (same); *Channell v. Citicorp Nat'l Servs., Inc.*, 1996 WL 563536, at *2 (N.D. Ill. 1996) (declining to exercise supplemental jurisdiction over state law counterclaim because it would create a "chilling effect" on private enforcement of the federal Consumer Leasing Act claim brought by the plaintiff). Similarly here, the Counterclaims should be dismissed to avoid protracted litigation on unrelated issues that would undermine the intended purpose of PACA to provide prompt payment to sellers of produce.

## II.    THE COUNTERCLAIMS ALSO FAIL AS A MATTER OF LAW

Even if the Court decides to exercise supplemental jurisdiction over the Counterclaims, they should each be dismissed as a matter of law due to multiple fatal defects of pleading.

### A.    Counts II and III Should Be Dismissed Because They Are Improper Attempts To Bootstrap Contract Allegations Into Claims For Tort Damages.

#### 1.    The Alleged Failure To Perform A Contract Cannot Support A Claim for Tort Damages

Counts II and III should be dismissed with prejudice because they violate the established black-letter rule that prevents a plaintiff from bootstrapping contract-based allegations into a claim for tort damages. As the Supreme Court explained in *Erlich v. Menezes*, 21 Cal.4th 543 (1999), "[a]n omission to perform a contractual obligation is never a tort, unless that omission is also an omission of a legal duty." *Id.* at 551. The Court described the recognized

---

[2] "Because PACA is remedial legislation, it should be construed broadly to effectuate its purpose." *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 138 (3d Cir. 2000). The statute itself requires produce dealers to make "full payment promptly" for any produce they purchase. 7 U.S.C. §499(b)(4). In amending the statute in 1984, Congress noted that the amendments were intended to "increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until full payment of sums due has been received by them." 1984 U.S. Code Cong. & Admin. News 406.

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1050870 v1/SF                -8-                RE-FILED MOTION TO DISMISS COUNTERCLAIMS
& TO STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:07-CV-02548-JW

exceptions in which a tort claim can be based on an alleged breach of contract (none of which apply here) and summarized that "[i]n each of these cases, the duty that gives rise to tort liability is either *completely independent of the contract* or arises from conduct which is both *intentional and intended to harm.*" *Id* at 552. (emphasis added). The Court explained the basis for the rule as follows:

> Focusing on intentional conduct gives substance to the proposition that a breach of contract is tortious only when some independent duty arising from tort law is violated. . . . If every negligent breach of a contract gives rise to tort damages the limitation would be meaningless, as would the statutory distinction between tort and contract remedies.

*Id.* at 554.

River Ranch's tort claims violate this established rule. Counts I and II purport to assert tort claims based on Natural Selection's alleged negligent failure (i) "to take adequate steps to test for and eliminate contamination of the produce it was processing and selling" (Countercl., ¶ 69), and (ii) "to take reasonable and necessary steps in the processing of its produce to ensure that it would not be contaminated" (Countercl., ¶ 78). These are the very same purported failures that River Ranch claims are a breach of Natural Selection's contractual obligations in Count I. *Compare* Countercl., ¶ 65 (alleging that Natural Selection "breached its agreement with River Ranch" by "processing, packaging and selling produce contaminated with E. Coli"). River Ranch makes no attempt to allege (nor could it allege) that the circumstances here meet the isolated exceptions noted in *Erlich* or that Natural Selection engaged in any intentional conduct intended to harm. Under *Erlich*, River Ranch tort claims thus fail as a matter of law.

### 2. River Ranch's Purported Tort Claims Are Further Barred By the Economic Loss Rule

As an independent basis for dismissal, River Ranch's tort claims fail because they seek recovery exclusively for economic losses. In *Aas v. Superior Court*, 24 Cal.4th 627, 636 (2000), the California Supreme Court reiterated the fundamental "economic loss rule" as follows: "In actions for negligence, a manufacturer's liability is limited to damages for physical injuries; no recovery is allowed for economic loss alone." The Court then went on to specifically clarify that

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1050870 v1/SF

-9-

RE-FILED MOTION TO DISMISS COUNTERCLAIMS
& TO STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:07-CV-02548-JW

the economic loss rule applies equally to claims for interference with prospective economic advantage. *Id.* at 645-47. Here, River Ranch does not allege that it suffered any physical damage to its property. Instead, River Ranch's tort claims seeks recovery for purely economic losses stemming from its alleged lost sales and the purported harm to its business reputation and customer base. These alleged damages fall squarely within the prohibition of the economic loss rule and are improper as a matter of law.

### 3. River Ranch's Interference with Prospective Economic Advantage Claim Should Also Be Dismissed For Failure to Allege "Independently Wrongful" Conduct.

In addition to the deficiencies outlined above, River Ranch's claim for negligent interference with prospective economic advantage suffers from an additional fatal defect. Under settled law, a plaintiff asserting a claim for tortious interference with prospective economic advantage must allege that the defendant engaged in "conduct that was wrongful by some legal measure other than the fact of the interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 393 (1995).[3] This fundamental pleading requirement precludes a plaintiff from automatically bootstrapping a breach of contract claim into a tortious interference claim simply by alleging that the breach interfered with the plaintiff's future business prospects. Rather, the plaintiff must allege some wrongful conduct that is independent of the breach itself. *See Khoury v. Maly's of California, Inc.* 14 Cal.App.4th 612 (1993) (dismissing tortious interference with prospective economic advantage claim without leave to amend where plaintiff alleged that the defendant's breach of contract injured the plaintiff's relationships with his customers); *Arntz Contracting Co. v. St. Paul Fire & Mar. Ins. Co.*, 47 Cal.App.4th 464, 479 (1996) ("A contracting party's unjustified failure or refusal to perform is a breach of contract, and cannot be transmuted into tort liability by claiming that the breach detrimentally affected the promisee's business.").

---

[3] Courts applying *Della Penna* have uniformly found that the requirement of independent wrongful conduct applies both to claims for intentional *and* negligent interference. *See, e.g., National Medical Transportation Network v. Deloitte & Touche*, 62 Cal.App.4th 412, 440 (1998) ("we conclude the trial court here should have instructed the jury on the 'independently wrongful' element of the tort of negligent interference with prospective economic advantage").

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1050870 v1/SF                -10-                RE-FILED MOTION TO DISMISS COUNTERCLAIMS
                                                 & TO STRIKE AFFIRMATIVE DEFENSES
                                                 CASE NO. 5:07-CV-02548-JW

Similarly here, River Ranch's allegations of tortious interference are deficient as a matter of law because the purported interference stems solely from Natural Selection's alleged failure to perform its contracts as promised. (*See* Section II.A.1 *supra*.) As in *Khoury* and *Arntz*, the alleged breach of Natural Selection's contractual obligations does not satisfy the "independently wrongful conduct" element required under *Della Penna*, and River Ranch's claim for tortious interference with prospective economic advantage should be dismissed without leave to amend.

### B. River Ranch's Contract Claims Are Inconsistent With the Attached Documents And Should Also Be Dismissed.

While Natural Selection does not dispute that the parties had a contractual relationship relating to the sale and purchase of produce, River Ranch's breach of contract claim fails because its allegations are undermined by the very documents it has attached to the Counterclaim. In considering the sufficiency of River Ranch's Counterclaims, the Court is entitled to consider all attached documents. *See Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir 1987) ("If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint.") Further, "when a written instrument contradicts allegations in a complaint to which it is attached, *the exhibit trumps the allegations.*" *Thompson v. Illinois Dept. of Prof. Reg.* 300 F.3d 750, 754 (7th Cir. 2002) (emphasis in original; internal quotes omitted).

Here, Attachment A is entitled the "Master Crop Agreement" and on its face indicates it is a contract between River Ranch and a company called Pride of San Juan, not Natural Selection. River Ranch asserts in conclusory terms that Natural Selection "succeeded to Pride of San Juan's interest in the Agreement." (Countercl., ¶ 55). But it fails to provide any factual basis for this assertion, and Attachment A itself provides no indication that Natural Selection somehow assumed the obligations in attached Agreement. In fact, Attachment A specifically states that "Grower may not assign any part of or interest in this Agreement without the written consent of [River Ranch]." Attachment A at ¶ 17. If Pride of San Juan had in fact assigned the "Master Crop Agreement" to Natural Selection, River Ranch would have the required written consent and should have attached it to the Counterclaim. The Court may consider these omissions and is not obligated to accept as true River Ranch's conclusory allegation that Attachment A is binding on

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1050870 v1/SF        -11-        RE-FILED MOTION TO DISMISS COUNTERCLAIMS
& TO STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:07-CV-02548-JW

Natural Selection. *See Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (courts "are not bound to accept as true a legal conclusion couched as a factual allegation.")

Confusing matters further, River Ranch does not explicitly base its breach of contract claim on Attachment A at all. Instead the only specific contractual terms it alleges were breached relate to Attachment B, which is entitled "River Ranch Fresh Foods LLC – Supplier Checklist." (*See* Counterclaims ¶¶ 62-66.) However, Attachment A contains an integration clause that expressly invalidates external documents, like Attachment B, that purport to supplement or change the terms of the parties' agreement: "This Agreement contains all the terms and conditions relative to its subject content to which the parties have agreed, and there are no other terms or conditions agreed to by the parties relative hereto." (*See* Attachment A at ¶ 18.) Taking River Ranch's allegations as true that Attachment A governs the parties' rights and obligations, then Attachment B must be ignored as a non-binding external document in light of the express integration clause of Attachment A. Given the inconsistencies (i) between Attachments A and B, and (ii) between the Attachments and allegations of the Counterclaims themselves, River Ranch's breach of contract claim is hopelessly confused and the claim should be dismissed.

### III. RIVER RANCH'S "AFFIRMATIVE DEFENSES" SHOULD BE STRICKEN BECAUSE THEY ARE COUNTERCLAIMS IMPROPERLY PLED AS DEFENSES.

In addition to the Counterclaims discussed above, River Ranch also purports to raise four "affirmative defenses" based on (i) offset, (ii) breach of contract, (iii) breach of implied and express warranties of merchantability, and (iv) breach of warranty of fitness for a particular purpose. These affirmative defenses appear to be based on the very same allegations made in support of the Counterclaims, relating to the contaminated produce sold during the Recall Period. *See* Counterclaims ¶ 5 ("NATURAL SELECTION breached its implied and express warranties of fitness for a particular purpose when it shipped and sent contaminated produce out into the stream of commerce"). River Ranch's purported "affirmative defenses" are therefore not true defenses at all. As a basic matter of pleading, an affirmative defense is defined as "a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's ... claim, even if all of the allegations in the complaint are true." *Quintana v. Gates*, 2004 WL 1661540, at *4 (C.D. Cal.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1050870 v1/SF                    -12-                    RE-FILED MOTION TO DISMISS COUNTERCLAIMS
                                                         & TO STRIKE AFFIRMATIVE DEFENSES
                                                         CASE NO. 5:07-CV-02548-JW

2004).

The purported "affirmative defenses" here do not fall within that definition. As discussed above, even if River Ranch could prove that Natural Selection breached a warranty or contractual obligation in connection with produce sold in the Recall Period, there would be no impact on Natural Selection's PACA rights with respect to produce sold *before* the Recall Period. (See Section I.A *supra*.) Because River Ranch's "affirmative defenses" have no relevance to Natural Selection's PACA claim, they should be stricken from the Answer in their entirety.

## CONCLUSION

For the foregoing reasons, Natural Selection respectfully requests that the Court dismiss all Counterclaims and strike all "affirmative defenses" from the Answer for lack of subject matter jurisdiction. If the Court finds that supplemental jurisdiction exists and opts not to decline jurisdiction under 28 U.S.C section 1367(c)(2), then Natural Selection asks that the Court dismiss all Counterclaims for failure to state a claim.

Respectfully submitted on Friday, August 10, 2007.

| COOLEY GODWARD KRONISH LLP | MEUERS LAW FIRM, P.L. |
|---|---|
| /s/ Whitty Somvichian | /s/ Katy Koestner Esquivel |
| Martin S. Schenker (109828)<br>Whitty Somvichian (194463)<br>101 California Street, 5th Floor<br>San Francisco, CA 94111-5800<br>Telephone: (415) 693-2000<br>Facsimile: (415) 693-2222<br>wsomvichian@cooley.com<br>mschenker@cooley.com | Lawrence H. Meuers (197663)<br>Katy Koestner Esquivel (pro hac vice)<br>5395 Park Central Court<br>Naples, Florida 34109<br>Telephone: (239) 513-9191<br>Facsimile: (239) 513-9677<br>lmeuers@meuerslawfirm.com<br>kesquivel@meuerslawfirm.com |
| *Co-Counsel for Plaintiff/Counter-Defendant* | *Counsel for Plaintiff/Counter-Defendant* |

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1050870 v1/SF

-13-

RE-FILED MOTION TO DISMISS COUNTERCLAIMS
& TO STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:07-CV-02548-JW

1  FILER'S ATTESTATION:

2  Pursuant to General Order No. 45, § X(B) regarding signatures, I attest under penalty
3  of perjury that the concurrence in the filing of this document has been obtained from its
4  signatories.

5  Dated: August 10, 2007

By:  /s/ Whitty Somvichian

Cooley Godward
Kronish LLP
Attorneys At Law
San Francisco

1050870 v1/SF    -14-    RE-FILED MOTION TO DISMISS COUNTERCLAIMS
& TO STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:07-CV-02548-JW